IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. ___18 C 5104___ |
| | ) | |
| GLOBAL MARKETING ENTERPRISES, INC., | ) | |
| LIFELINE NUTRIENTS, CORP., and PRONTO | ) | |
| FOODS COMPANY, corporations, and | ) | |
| EDUARDO S. CHUA and HAIDEE V. DAWIS, | ) | |
| individuals | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CONSENT DECREE OF PERMANENT INJUNCTION

Plaintiff, the United States of America, by its undersigned counsel, having filed a

Complaint for Permanent Injunction against Global Marketing Enterprises, Inc., Lifeline

Nutrients, Corp., Pronto Foods Company, Eduardo S. Chua, and Haidee V. Dawis (collectively,

"Defendants"), and Defendants, without admitting or denying the allegations in the Complaint,

having appeared and consented to entry of this Decree without contest and before any testimony

has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      This Court has jurisdiction over the subject matter and all parties to this action.

2.      The Complaint states a cause of action against Defendants under the Federal

Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "Act").

3.      Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for

introduction, or causing to be introduced or delivered for introduction, into interstate commerce

articles of food (dietary supplements, as defined by 21 U.S.C. § 321(ff)), that are:

A.    Adulterated within the meaning of 21 U.S.C. § 342(g)(1) in that they have been prepared, packed, or held in violation of the current good manufacturing practice regulations for dietary supplements set forth in 21 C.F.R. Part 111 ("Dietary Supplement CGMP"); and

B.    Misbranded within the meaning of 21 U.S.C. §§ 343(s)(2)(B) and/or (q)(5)(F), because their labels fail to identify the product by using the term "dietary supplement" as part of the statement of identity and/or fail to bear a Supplement Facts panel.

4.    Defendants violate 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) and misbranded within the meaning of 21 U.S.C. §§ 343(s)(2)(B) and/or (q)(5)(F) while such articles are held for sale after shipment of one or more of their components in interstate commerce.

5.    Defendants violate 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs (as defined by 21 U.S.C. § 321(p)) that are neither approved pursuant to 21 U.S.C. § 355(a) nor exempt from approval pursuant to 21 U.S.C. § 355(i).

6.    Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of drug (as defined by 21 U.S.C. § 321(g)(1)) that are misbranded within the meaning of 21 U.S.C. § 352(f)(1) because their labeling fails to bear adequate directions for use.

7.    Defendants violate 21 U.S.C. § 331(k) by causing articles of drug to become misbranded within the meaning of 21 U.S.C. § 352(f)(1) while such articles are held for sale after shipment of one or more of their components in interstate commerce.

8.     Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons or entities in active concert or participation with any of them, who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a), and the inherent equitable authority of this Court, from directly or indirectly receiving, manufacturing, preparing, packing, repacking, labeling, holding, or distributing any articles of food (including but not limited to dietary supplements and their components) and/or articles of drug, at or from 1801 S. Canal Street, Chicago, Illinois, or at or from any other location(s) at which Defendants now or in the future directly or indirectly receive, manufacture, prepare, pack, repack, label, hold, or distribute any articles of food (including but not limited to dietary supplements and their components) and/or articles of drug (hereafter, "Defendants' Facility" or "the Facility"), unless and until:

A.     Defendants retain, at Defendants' expense, an independent person (the "CGMP Expert") who is without any personal or financial ties (other than a retention agreement and payment for services) to Defendants and/or their families, and who, by reason of background, training, education, or experience, is qualified to inspect the Facility to determine whether the methods, processes, and controls for receiving, manufacturing, preparing, packing, repacking, labeling, holding, or distributing dietary supplements are operated and administered in conformity with Dietary Supplement CGMP.  Defendants shall notify FDA in writing of the identity and qualifications of the CGMP Expert within ten (10) business days of retaining such expert or, if Defendants have already retained a CGMP expert, within ten (10) business days after signing this Decree;

B.      The CGMP Expert performs a comprehensive inspection of the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements and certifies in writing to FDA that:  (1) he or she has inspected the Facility, methods, processes, and controls; (2) all Dietary Supplement CGMP deviations that have been brought to Defendants' attention by FDA, the CGMP Expert, and any other source have been corrected; and (3) the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements, are, in the CGMP Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations.  The CGMP Expert's report of the inspection, which shall be submitted to FDA, shall include, but not be limited to, a determination that Defendants have methods, processes, and controls to ensure that they:

(1)   Conduct at least one appropriate test or examination to verify the identity of a component that is a dietary ingredient, prior to use, as required by 21 C.F.R. § 111.75(a)(1)(i);

(2)   Establish product specifications for the identity, purity, strength, and composition of the finished batch of dietary supplements, and for limits on those types of contamination that may adulterate, or that may lead to the adulteration of, the finished batch of dietary supplements to ensure the quality of dietary supplements, as required by 21 C.F.R. § 111.70(e), and verify that these product specifications have been met, as required by 21 C.F.R. § 111.75(c);

(3)   Prepare and follow a written master manufacturing record ("MMR") for each unique formulation and batch size of dietary supplement manufactured that identifies specifications for the points, steps, or stages in the manufacturing process where control is

4

necessary to ensure the quality of the dietary supplement and that the dietary supplement is

packaged and labeled as specified in the MMR, as required by 21 C.F.R. §§ 111.205(a) and

(b)(1);

(4)    Establish and follow written procedures setting out the responsibilities of

quality control operations, including written procedures for conducting a material review and

making a disposition decision, and for approving or rejecting any reprocessing, as required by 21

C.F.R. § 111.103;

(5)    Establish and follow written procedures for maintaining, cleaning, and

sanitizing, as necessary, all equipment, utensils, and any other contact surfaces that are used to

manufacture, package, label, or hold components or dietary supplements, as required by 21

C.F.R. § 111.25(c); and

(6)    Establish and follow written procedures for reviewing and investigating

product complaints, as required by 21 C.F.R. § 111.553;

C.    Defendants retain, at Defendants' expense, an independent person (the

"Labeling Expert") who is without any personal or financial ties (other than a retention

agreement and payment for services) to Defendants and/or their families, except that this person

may be the same as the CGMP Expert described in paragraph 8(A), and who, by reason of

background, training, education, or experience, is qualified to review Defendants' product

labeling (including but not limited to labels, catalogs, and websites) and other

promotional/informational material to determine whether:  (1) the labeling complies with 21

U.S.C. § 343 and applicable regulations; and (2) Defendants' claims cause any product that they

receive, manufacture, prepare, pack, repack, label, hold, or distribute to be a drug within the

meaning of 21 U.S.C. § 321(g)(1).  Defendants shall notify FDA in writing of the identity and

qualifications of the Labeling Expert within ten (10) business days of retaining such expert, or, if

Defendants have already retained a Labeling Expert, within ten (10) business days after signing

this Decree;

        D.     The Labeling Expert conducts a comprehensive review of Defendants'

product labeling (including but not limited to labels, catalogs, and websites) and other

promotional/informational material and certifies in writing to FDA that:  (1) he or she has

reviewed Defendants' product labeling and other promotional/informational material; (2) all

labeling violations brought to Defendants' attention by FDA, the Labeling Expert, and any other

source, have been corrected; and (3) Defendants' products and claims are, in the Labeling

Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations.  The

Labeling Expert shall prepare a detailed report of this review, which shall be submitted to FDA,

that shall include, but not be limited to, a determination that:

        (1)   Defendants have implemented procedures that are adequate to ensure that

their product labeling complies with 21 U.S.C. § 343 and applicable regulations; and

        (2)   Defendants have implemented procedures that are adequate to ensure that

their claims do not cause any product that they receive, manufacture, prepare, pack, repack,

label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1), unless and

until the product is the subject of an approved new drug application or abbreviated new drug

application, or is exempt from approval under an investigational new drug application, 21 U.S.C.

§§ 355(a), (b), (i), (j);

        E.     Defendants recall and destroy, under FDA's supervision and in accordance

with the procedures provided in paragraph 9, all dietary supplements (including components)

and/or articles of drug (including raw and in-process materials and finished products) that were

received, manufactured, prepared, packed, repacked, labeled, held, or distributed by Defendants between July 13, 2017 and the date of entry of this Decree;

F.      Defendants report to FDA in writing the actions they have taken to:

(1)   Correct the Dietary Supplement CGMP and labeling deviations brought to Defendants' attention by FDA, the CGMP Expert, Labeling Expert, and any other source;

(2)   Ensure that the facilities, methods, processes, and controls used by Defendants to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements are and will be continuously operated in conformity with Dietary Supplement CGMP;

(3)   Ensure that Defendants' product labeling complies with 21 U.S.C. § 343 and applicable regulations; and

(4)   Ensure that Defendants' claims do not cause any product that they receive, manufacture, prepare, pack, repack, label, hold, or distribute to be a drug within the meaning of 21 U.S.C. § 321(g)(1) unless the product is the subject of an approved new drug application or abbreviated new drug application, or is exempt from approval under an investigational new drug application, 21 U.S.C. §§ 355(a), (b), (i), and (j);

G.      As and when FDA deems necessary, FDA representatives inspect Defendants' Facility, including the buildings, equipment, products, labeling, and all relevant records contained therein, to determine whether the requirements of this Decree have been met and whether Defendants are operating in conformity with the Act, its implementing regulations, and this Decree.  Provided that FDA finds that Defendants' submissions under paragraph 8 (A)-(F) and (H) of this Decree appear to be satisfactory and notifies Defendants of such finding in writing, FDA will initiate the inspection within thirty (30) calendar days of such written

7

notification, or as soon as practicable in the event that FDA representatives are attending to FDA matters that cannot be rescheduled;

H.    Defendants have paid all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews with respect to paragraph 8, at the rates set forth in paragraph 16; and

I.    FDA notifies Defendants in writing that they appear to be in compliance with the requirements set forth in paragraphs 8(A)-(F) and (H) of this Decree.  In no circumstance shall FDA's silence be construed as a substitute for written notification.

J.    After complying with paragraphs 8(A)-(F) and (H), and receiving FDA's written notification pursuant to paragraph 8(I), Defendants shall provide written notification to FDA within twenty (20) business days after resuming operations identifying the exact date on which they resumed operations.

9.    Within forty-five (45) business days after entry of this Decree, Defendants, under FDA's supervision, shall destroy all dietary supplements (including components) and/or articles of drug (including raw and in-process materials and finished products) that are in Defendants' possession, custody, or control, except that FDA may agree to exempt any unopened, unused raw materials or components from being destroyed under this paragraph if Defendants demonstrate, to FDA's satisfaction, that such an exemption should apply.  FDA may extend the deadline under this paragraph in order to evaluate Defendants' requests for an exemption.  Defendants shall bear the costs of destruction and the costs of FDA's supervision.  Defendants shall not dispose of any products in a manner contrary to the provisions of the Act, any other federal law, or the laws or any State or Territory, as defined in the Act, in which the products are disposed.

10. Upon resuming operations after complying with paragraphs 8(A)-(F) and (H), and receiving FDA's written notification pursuant to paragraph 8(I), Defendants shall retain an independent person (the "Auditor") who shall meet the criteria for, and may be the same person as, the CGMP Expert and Labeling Expert described in paragraphs 8(A) and 8(C), to conduct audit inspections of the Facility and the methods, processes, and controls used to receive, manufacture, prepare, pack, repack, label, hold, and distribute dietary supplements, and of Defendants' dietary supplement labeling (including but not limited to labels, catalogs, and websites) and other promotional/informational material. Such audit inspections must entail the Auditor's physical presence at the Facility; audit inspections may not be conducted entirely by virtual means (e.g., by camera or videolink). Thereafter:

A. The Auditor shall conduct audit inspections no less than once every six (6) months for a period of no less than three (3) years and then at least once every year thereafter. The first audit shall occur not more than six (6) months after Defendants have both (i) received FDA's written notification pursuant to paragraph 8(I), and (ii) resumed operations as described in paragraph 8(J).

B. At the conclusion of each audit inspection, the Auditor shall prepare a detailed written audit report ("Audit Report") analyzing whether Defendants are in compliance with this Decree, the Act, and its implementing regulations and identifying any deviations from such requirements ("Audit Report Observations"). As a part of every Audit Report (except the first one), the Auditor shall assess the adequacy of actions taken by Defendants to correct all previous Audit Report Observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than ten (10) business days after the audit inspection is completed. In addition, Defendants shall maintain the

Audit Reports in separate files at Defendants' Facility and shall promptly make the Audit

Reports available to FDA upon request.

        C.     If an Audit Report contains any Audit Report Observations, Defendants

shall, within twenty (20) business days after receipt of the Audit Report, correct those

observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after

receiving the Audit Report, Defendants believe that correction of the Audit Report Observations

will take longer than twenty (20) business days, Defendants shall, within ten (10) business days

after receipt of the Audit Report, submit to FDA in writing a proposed schedule for completing

corrections ("Audit Correction Schedule"). The Audit Correction Schedule must be reviewed

and approved by FDA in writing prior to implementation by Defendants. In no circumstance

shall FDA's silence be construed as a substitute for written approval. Defendants shall complete

all corrections according to the approved Audit Correction Schedule. Within thirty (30) business

days after Defendants' receipt of an Audit Report, unless FDA notifies Defendants that a shorter

time period is necessary, or within the time period provided in an FDA-approved Audit

Correction Schedule, the Auditor shall review the actions taken by Defendants to correct the

Audit Report Observations. Within ten (10) business days after beginning that review, the

Auditor shall report in writing to FDA whether each of the Audit Report Observations has been

corrected and, if not, which Audit Report Observations remain uncorrected.

      11.     Upon entry of this Decree, Defendants are permanently restrained and enjoined

under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any of the

following acts:

        A.     Violating 21 U.S.C. § 331(a), by introducing or delivering for

introduction, or causing to be introduced or delivered for introduction, into interstate commerce

articles of food (including but not limited to dietary supplements and their components) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded within the meaning of 21 U.S.C. § 343;

B.  Violating 21 U.S.C. § 331(k), by causing articles of food (including but not limited to dietary supplements and their components) to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) or misbranded within the meaning of 21 U.S.C. § 343, while such articles are held for sale after shipment of one or more of their components in interstate commerce;

C.  Violating 21 U.S.C. § 331(d) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a) nor exempt from approval pursuant to 21 U.S.C. § 355(i);

D.  Violating 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of drug that are misbranded within the meaning of 21 U.S.C. § 352;

E.  Violating 21 U.S.C. § 331(k) by causing articles of drug to become misbranded within the meaning of 21 U.S.C. § 352, which such articles are held for sale after shipment of one or more of their components in interstate commerce; and

F.  Failing to implement and continuously maintain the requirements of this Decree.

12.  If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, the analysis of a sample, a report, or data prepared or submitted by Defendants, the CGMP Expert, Labeling Expert, Auditor, or any other information, that Defendants have failed

to comply with any provision of this Decree, Defendants have violated the Act or its implementing regulations, or additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A.      Cease receiving, manufacturing, preparing, packing, repacking, labeling, holding, or distributing any and all products;

B.      Recall, at Defendants' expense, any product that in FDA's judgment is adulterated, misbranded, or otherwise in violation of this Decree, the Act, or its implementing regulations;

C.      Revise, modify, expand, or continue to submit any reports, plans, procedures, or other records prepared pursuant to this Decree;

D.      Submit additional reports or information to FDA as requested;

E.      Institute or reimplement any of the requirements set forth in this Decree;

F.      Issue a safety alert; and/or

G.      Take any other corrective actions as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with this Decree, the Act, or its implementing regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

13.      The following process and procedures apply when the FDA issues an order under paragraph 12, except as provided in subparagraph D below:

12

A.     Unless a different timeframe is specified by the FDA in its order, within ten (10) days after receiving an order under paragraph 12, Defendants shall notify FDA in writing either that: (i) Defendants are undertaking or have undertaken corrective action, in which event Defendants also shall describe the specific actions taken or to be taken and the proposed schedule for completing the actions; or (ii) Defendants do not agree with the FDA's order.  If Defendants notify the FDA that they do not agree with the FDA's order, Defendants shall explain in detail and in writing the basis for the disagreement; in doing so, Defendants may also propose specific alternative actions and specific timeframes for achieving the FDA's objectives;

B.     If any Defendant notifies FDA that he does not agree with FDA's order, FDA will review Defendant's notification and thereafter, in writing, affirm, modify or withdraw its order, as FDA deems appropriate.  If FDA affirms or modifies its order, it will explain the basis for its decision in writing.  This written notification shall constitute final agency action;

C.     If FDA affirms or modifies it order, Defendants shall, upon receipt of FDA's order, immediately implement FDA's order (as modified, if applicable), and, if they so choose, bring the matter before this court.  Defendants shall continue to diligently implement FDA's order while the matter is before the Court and unless and until the Court reverses, stays or modifies FDA's order.   Any review of FDA's decision under this paragraph shall be made in accordance with the terms set forth in paragraph 24 of this Decree;

D.     The process and procedures set forth in paragraph 13 (A) - (C) shall not apply to any order issued under paragraph 12 if such order states that, in the FDA's judgment, the matter raises significant public health concerns.  In such case, Defendants shall immediately and fully comply with the terms of that order.  Should Defendants seek to challenge any such order, they may petition this Court for relief.

13

E.     Any cessation of operations or other action described in paragraph 12 shall continue until either (i) Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendants may resume operations, or (ii) the Court otherwise grants the Defendant relief from the FDA's order.  Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's inspections, investigations, supervision, analyses, examinations, sampling, testing, reviews, document preparation, travel, and subsistence expenses to implement and monitor the remedies set forth in paragraph 12, at the rates specified in paragraph 16.

14.     Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendants' operations and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, and all applicable regulations.  During such inspections, FDA representatives shall be permitted to:  have immediate access to Defendants' places of business including, but not limited to all buildings, equipment, dietary supplement components, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material therein; take photographs and make video recordings; take samples of Defendants' dietary supplement components, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material; and examine and copy all records relating to the receipt, manufacture, preparing, packing, repacking, labeling, holding, and distribution of any and all of Defendants' products and their components.  The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

14

15.     Defendants shall promptly provide any information or records to FDA upon request regarding the receipt, manufacture, preparing, packing, repacking, labeling, holding, and distribution of Defendants' products, including components.

16.     Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with any part of this Decree, including the travel incurred by specialized investigatory and expert personnel, at the standard rates prevailing at the time the costs are incurred.  As of the date that this Decree is signed by the parties, these rates are: $95.39 per hour or fraction thereof per representative for inspection and investigative work; $114.33 per hour or fraction thereof per representative for analytical or review work; $0.545 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses where necessary.  In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.  Defendants shall make payment in full to FDA within thirty (30) business days of receiving written notification from FDA of the costs; provided that, if Defendants are unable to make payment within thirty (30) days, Defendants may submit a proposed installment schedule for the FDA's review and approval.

17.     Within five (5) business days after entry of this Decree, Defendants shall post a copy of this Decree in a conspicuous location in a common area at Defendants' Facility and shall ensure that the Decree remains posted for as long as the Decree remains in effect.  Within ten (10) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from

a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph.

18.     Within ten (10) business days after entry of this Decree, Defendants shall hold a general meeting or series of smaller meetings for all employees, at which they shall describe the terms and obligations of this Decree.  Within fifteen (15) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph and a copy of the agenda, list of attendees, and meeting minutes from the meeting(s) held pursuant to this paragraph.

19.     Within ten (10) business days after entry of this Decree, Defendants shall provide a copy of the Decree by personal service, email (with delivery confirmation), or certified mail (return receipt requested) to each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons or entities in active concert or participation with any of them ("Associated Persons").  Within twenty (20) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who have received a copy of this Decree, and attaching a copy of the executed certified mail return receipts or email delivery confirmation, as applicable.

20.     In the event that any of the Defendants becomes associated with any additional Associated Person(s) at any time after entry of this Decree, Defendants shall immediately provide a copy of this Decree, by personal service, email (with delivery confirmation), or certified mail (return receipt requested) to such Associated Person(s).  Within ten (10) business

16

days of each time that any of the Defendants becomes associated with any additional Associated Person, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts, or email delivery confirmation, as applicable.

21.     Defendants shall notify FDA in writing at least ten (10) business days before any change in ownership, name, or character of their business that occurs after entry of this Decree, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the structure or identity of Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., and/or Pronto Foods Company, or the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect obligations arising out of this Decree. Defendants shall provide a copy of this Decree to any prospective successor or assign at least twenty (20) business days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) business days prior to such assignment or change in ownership.

22.     If any Defendant fails to comply with any provision of this Decree, the Act, or its implementing regulations, including any time frame imposed by this Decree, then, upon written notice of the United States of America, Defendants shall pay to the United States of America: one thousand seven hundred and fifty dollars ($1,750.00) in liquidated damages for each day such violation continues; an additional sum of one thousand seven hundred and fifty dollars ($1,750.00) in liquidated damages per day per violation, for each violation of this Decree, the Act, or its implementing regulations; and an additional sum in liquidated damages equal to twice

17

the retail value of any product distributed in violation of this Decree, the Act, or its implementing regulations. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, or the Court to impose, additional civil or criminal penalties to be paid by Defendants, or remedies based on conduct that may also be the basis for payment of liquidated damages pursuant to this paragraph.

23.     Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), expert witness fees, travel expenses incurred by attorneys and witnesses, investigational and analytical expenses, administrative and court costs, and any other costs or fees relating to such contempt proceedings.

24.     Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final. All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the Court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

25.     All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be prominently marked "Decree Correspondence" and addressed to the Program Division Director, Office of Human and Animal Food Operations East 6 (HAFE 6), Chicago District Office, U.S. Food and Drug Administration, 550 West Jackson Blvd., Suite 1500, Chicago, IL 60661, and shall reference this civil action by case name and civil action number. All notifications, correspondence and communications to Defendants from United

States of America and/or FDA under this Decree, shall be prominently marked "Decree Correspondence" and shall be sent to Defendants by electronic mail and hard copy to: (i) Eduardo S. Chua, President, Global Marketing Enterprises, Inc. / Pronto Foods Company, 1801-C South Canal Street, Chicago, Illinois 60616-1522, ecpronto@hotmail.com; (ii) Haidee V. Dawis, hdawis@gmail.com; and (iii) Rosario I. Villeroz, Lifeline Nutrients Corp., 1801-C South Canal Street, Chicago, Illinois 60616-1522, chavilleroz@yahoo.com.

26.    No sooner than five (5) years after Defendants receive notification from FDA pursuant to paragraph 8(I), Defendants may petition this Court for relief from this Decree.  If Defendants have maintained a state of continuous material compliance with this Decree, the Act, and its implementing regulations during the five (5) years preceding Defendants' petition, the United States will not oppose such petition.

27.    If Defendant Dawis ceases to be affiliated in any capacity (e.g., as owner, director, officer, employee, or consultant), directly or indirectly, with Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., Pronto Foods Company or any of their affiliates (including but not limited to franchises, "doing business as" entities, subsidiaries, successors, or assigns), and is no longer engaging in, directly or indirectly, receiving, preparing, processing, packing, labeling, holding, or distributing FDA-regulated products, then Defendant Dawis may provide to FDA an affidavit setting forth the facts and manner of her employment along with supporting documentation.  Upon submission of this affidavit (and notwithstanding the time period specified in paragraph 26), Defendant Dawis may petition the Court for relief from her obligations under paragraphs 1 through 25 of this Decree subject to the requirement that, if Defendant Dawis at any time while this Decree is in effect intends to work for, advise, or guide any FDA-regulated entity, she shall provide written notice to FDA no less than thirty (30) days

before engaging in such activities. If Defendant Dawis has submitted evidence satisfactory to the United States that she is no longer affiliated with Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., Pronto Foods Company or any of their affiliates, or any other FDA-regulated entity, the United States will not oppose such petition.

28.     If Defendant Dawis ceases to be affiliated in any capacity (e.g., as owner, director, officer, employee, or consultant), directly or indirectly, with Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., Pronto Foods Company or any of their affiliates (including but not limited to franchises, "doing business as" entities, subsidiaries, successors, or assigns), then Defendant Dawis may provide to FDA an affidavit setting forth the facts and manner of her employment along with supporting documentation. If Defendant Dawis has submitted evidence satisfactory to the United States that she is no longer affiliated with Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., Pronto Foods Company or any of their affiliates, Defendant Dawis shall have no liability under this Decree for any acts or omissions by Global Marketing Enterprises, Inc., Lifeline Nutrients, Corp., Pronto Foods Company or any of their affiliates after the date her affiliation ends.

29.     This Court retains jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

SO ORDERED, this ____ day of _____, 2018.


_____
UNITED STATES DISTRICT JUDGE

Entry consented to:

For Defendants

_____
EDUARDO S. CHUA
Individually and on behalf of Global
Marketing Enterprises, Inc., Lifeline Nutrients,
Corp., and Pronto Foods Company

_____
ROSARIO I. VILLEROZ
On behalf of Lifeline Nutrients, Corp.

_____
HAIDEE V. DAWIS
Individually

_____
GRANT BLUMENTHAL
Blumenthal Law Group PC
180 N. LaSalle Street
Suite 3700
Chicago, IL  60601
(312) 981-5055
Attorney for Defendants

For Plaintiff

JOHN R. LAUSCH, JR.
United States Attorney

_____
DONALD R. LORENZEN
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL  60604
(312) 353-5330
donald.lorenzen@usdoj.gov


CHAD A. READLER
Acting Assistant Attorney General
Civil Division

ETHAN P. DAVIS
Deputy Assistant Attorney General

GUSTAV W. EYLER
Acting Director
Consumer Protection Branch

JILL FURMAN
Assistant Director

_____
JAMES W. HARLOW
Trial Attorney
Consumer Protection Branch
P.O. Box 386
Washington, D.C. 20044-0386
Telephone: (202) 514-6786
Email:  james.w.harlow@usdoj.gov


OF COUNSEL:
ROBERT P. CHARROW
General Counsel

REBECCA K. WOOD
Chief Counsel

21

Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation

JULIE LOVAS
Associate Chief Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 31, Room 4520
Silver Spring, MD 20993-0002
Telephone: (301) 796-8575
Email: julie.lovas@fda.hhs.gov